UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-5718 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| STANLEY JENKINS and ANDREW FOX, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Defendants Stanley Jenkins and Andrew Fox move for summary judgment on Plaintiff Christopher Young's claims against them. (Defendants' Motion for Summary Judgment ("Mot.") (Dkt. No. 95); Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Mem.") (Dkt. No. 97).)[1] Young opposes the motion. (Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Opp'n") (Dkt. No. 107).) For the following reasons, we deny Defendants' motion.

**BACKGROUND**

We take the following facts from the parties' Local Rule 56.1 statements, responses, and the materials cited therein. (*See* Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' SOF") (Dkt. No. 96); Plaintiff's Local Rule 56.1 Statement of Additional Undisputed Material Facts ("Pl.'s SOAF") (Dkt. No. 111); Plaintiff's Response to Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s Resp. to Defs.' SOF") (Dkt. No. 112); Defendants' Responses to Plaintiff's Local Rule 56.1 Statement of Additional Facts ("Defs.'

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Resp. to Pl.'s SOAF") (Dkt. No. 117).) These facts are not genuinely disputed unless otherwise noted.

The relevant events took place on two days in late 2017: October 27 and November 30. On these dates, Young was an inmate housed at Stateville Correctional Center ("Stateville"); Fox was a correctional sergeant at Stateville; and Jenkins was a correctional lieutenant at Stateville. (Pl.'s Resp. to Defs.' SOF ¶ 3; Defs.' Resp. to Pl.'s SOAF ¶ 1; Transcript of Andrew Fox's Deposition ("Fox Dep.") (Dkt. No. 96-2) at 7:8–8:10.)

## I. October 27, 2017

On October 27, 2017, a Stateville correctional officer named Peters came to Young's cell with another inmate, Jessie Adams, who was to be Young's cellmate. (Defs.' Resp. to Pl.'s SOAF ¶ 2.) At that time, Young had a "low bunk permit," which is a medical permit stating that an inmate must take the bottom bunk of a cell's bunk bed. (Fox Dep. at 21:17–22, 28:13–21, 42:11–44:8.) Young was provided the low bunk permit because arthritis in his back and neck—which caused excruciating pain that radiated through his back, neck, arms, and legs—prevented him from climbing onto the top bunk. (Transcript of Christopher Young's Deposition ("Young Dep.") (Dkt. No. 96-1) at 16:7–11, 17:13–20, 18:9–11, 73:5–24, 75:23–76:5.) The parties tell different stories about what happened once Peters and Adams arrived at Young's cell.

***Young's Version of Events.*** According to Young, Peters told him to remove his belongings off of the bottom bunk and move them to the top bunk so Adams could occupy the bottom bunk. (Pl.'s SOAF ¶ 7; Young Dep. at 14:24–15:14, 18:20–19:7; Exhibit A to Opp'n ("Oct. 28, 2017 Grievance") (Dkt. No. 108-1) at 2.)[2] Young responded by saying that he could

---

[2] Young relies on grievances he filed in late 2017 to oppose Defendants' motion for summary judgment. (*See* Pl.'s SOAF ¶¶ 2, 4, 7, 8, 13–20, 22, 36–38; Exhibits A, B, C & I to Opp'n (Dkt. Nos. 108-1, 108-2, 108-3, & 108-9).) Defendants contend that these grievances are inadmissible hearsay. (Defs.' Resp. to Pl.'s SOAF ¶¶ 7, 8, 13–20, 22, 36–38.) The grievances are hearsay to

2

not move to the top bunk because he had a low bunk permit. (Pl.'s SOAF ¶ 8; Young Dep. at 14:24–15:16; Oct. 28, 2017 Grievance at 2.) After Peters yelled at Young, Young asked Peters to bring a sergeant or lieutenant over. (Pl.'s SOAF ¶¶ 13, 14; Oct. 28, 2017 Grievance at 2–3.) Fox then came to Young's cell. (Pl.'s SOAF ¶ 18; Oct. 28, 2017 Grievance at 3; Exhibit B to Opp'n ("Nov. 5, 2017 Grievance") (Dkt. No. 108-2) at 3.) Fox asked Young to show his low bunk permit, which Young did. (Pl.'s SOAF ¶¶ 18, 19; Oct. 28, 2017 Grievance at 3; Nov. 5, 2017 Grievance at 3.) Fox thereafter told Young that he ran the cell house, not Young, and that Young was either going to the top bunk or to segregation (a unit where inmates who break major departmental rules may be temporarily housed). (Pl.'s SOAF ¶ 20; Young Dep. at 23:10–18; Fox Dep. at 15:12–16:7; Nov. 5, 2017 Grievance at 3.) Young chose to go to segregation rather than climbing onto the top bunk and risk being injured. (Pl.'s SOAF ¶ 22; Young Dep. at 21:23–22:3, 75:12–18, 78:9–16.) Fox then called Jenkins to Young's cell, and Defendants escorted Young to segregation. (Young Dep. at 22:18–22, 23:10–20.)

***Defendants' Version of Events.*** According to Defendants, the October 27 incident at Young's cell did not involve Young's low bunk permit. (*See* Defs.' Resp. to Pl.'s SOAF ¶ 19; Fox Dep. at 58:6–20, 71:11–16.) Rather, Young did not want a cellmate, and when Peters

---

the extent Young relies upon their content to establish what happened on October 27 and November 30. *See* Fed. R. Evid. 801(c); *Silva v. Mitchell*, No. 18 C 1300, 2021 WL 4477959, at *22 n.24 (N.D. Ill. Sept. 30, 2021). At summary judgment, however, evidence does not need to be admissible in form; it only needs to be admissible in content. *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). The statements in Young's grievances are matters within his own personal knowledge that he can testify about at trial. *See Rankin v. Wexford Health Sources, Inc.*, No. 16 C 9534, 2019 WL 3554543, at *6 (N.D. Ill. Aug. 5, 2019). Therefore, "even if the grievances would not be admissible at trial . . . [Young's] testimony concerning the statements therein . . . *would* be admissible." *Id.* (emphasis in original); *see also Williams v. Schwarz*, No. 15 C 1691, 2018 WL 1961143, at *9 (N.D. Ill. Apr. 26, 2018) (considering statements in a prisoner's grievances at summary judgment because the prisoner would be allowed to testify about the statements at trial "independently of the grievance documents"). As such, we consider Young's statements in his grievances.

brought Adams over to be his cellmate, Young blocked his cell door with his personal belongings and refused to let anyone into his cell.[3] (Defs.' SOF ¶¶ 10, 11; Fox Dep. at 46:20–48:22.) Fox came over to Young's cell and ordered him to remove his belongings from the door, but Young refused. (Defs.' SOF ¶ 11; Fox Dep. at 46:20–48:6, 58:6–16, 71:23–72:9.) Fox then handcuffed Young and transported him to the bullpen, which is a holding cell where inmates are placed before they are transported to other units, such as segregation. (Fox Dep. at 59:9–17, 65:4–17, 66:23–67:2.) Once Young was in the bullpen, Fox called Jenkins over, and Jenkins transported Young to segregation. (*Id.* at 65:12–66:9.)

## II.     November 30, 2017

On November 30, 2017, Fox observed Young banging on his cell door with his property box. (Defs.' Resp. to Pl.'s SOAF ¶ 25.) Fox ordered Young several times to stop banging the box and step away from the front of the cell. (*Id.*) Young refused and screamed "[F]*** you Sgt. Fox[,] come up here and make me with your lying b**** a**. I will f*** all y'all up. Take me to seg[,] I'm ready to go. Y'all b****** gonna take me to seg right now." (*Id.*) Defendants came to Young's cell, and Jenkins told Young to "cuff up" because he was going to segregation. (Young Dep. at 32:14–20, 82:20–83:2.) Young placed his hands behind his back and was handcuffed. (*Id.* at 32:14–21, 37:16–20, 83:3–7; Fox Dep. at 73:17–74:20.)

The parties agree that Defendants thereafter took Young to the bullpen and that the route to the bullpen involved proceeding down at least one flight of stairs. (*See* Defs.' Resp. to Pl.'s SOAF ¶ 26; Young Dep. at 82:8–19; Fox Dep. at 74:15–20, 75:20–76:2, 76:21–77:18.) The parties, however, dispute what happened on the way to the bullpen.

---

[3] Young, for his part, testified that he did not refuse to have a cellmate and that he did not block his cell door. (Young Dep. at 20:2–7, 78:9–79:5.)

4

***Young's Version of Events.*** Defendants escorted Young to the bullpen with Jenkins walking directly behind Young, holding his handcuffs, and Fox walking behind Young on his left side. (Young Dep. at 83:3–84:1, 101:1–4.) Defendants shoved Young as they walked. (*Id.* at 84:13–17.) When the trio arrived at the top of the stairs that led down to the bullpen, Fox was on Young's left and "Jenkins had [Young] in the back." (*Id.* at 86:3–8.) Young then felt a hand push him in the left side of his back and another hand push him on the back of his head. (*Id.* at 99:22–100:17, 101:1–15.) Although Young was not facing Defendants when he was pushed, he believes that Fox pushed him from the left side because Fox was on his left side and that Jenkins pushed his head because Jenkins was behind him. (*Id.* at 100:11–101:15.) Young fell headfirst and somersaulted down the stairs—hitting the rail, the wall, and every stair—until he landed on his back on the floor at the bottom of the stairs. (*Id.* at 86:9–87:4.) As a result of the fall, Young sustained a "knot" on his head and bruises and cuts on his arms and legs. (*Id.* at 37:21–38:2, 63:24–64:3.) He also aggravated the arthritis in his neck and spine. (*Id.* at 37:21–38:2.) After the fall, and without saying a word, Defendants dragged Young by the handcuffs along the floor for five to six feet before placing him in the bullpen. (*Id.* at 37:9–13, 85:18–24, 87:5–17, 88:1–3.) While in the bullpen, Young asked unknown staff for medical attention, but he was ignored. (*Id.* at 88:11–89:3.)

***Defendants' Version of Events.*** Fox denies pushing Young down the stairs, and he further denies that Young ever fell down the stairs to the bullpen. (Fox Dep. at 64:19–65:1, 67:3–6, 77:19–78:1.) Jenkins testified that although he does not recall the day Young's fall allegedly occurred, he never would have pushed Young down the stairs. (Transcript of Stanley Jenkins's Deposition ("Jenkins Dep.") (Dkt. No. 96-3) at 16:21–17:7, 22:21–23:4.) Defendants also contend that Young never mentioned a fall to a medical provider or sought medical

5

treatment for a fall. (Defs.' SOF ¶¶ 34, 36.) In fact, Defendants continue, Young refused treatment on the day of the alleged fall. (*Id.* ¶ 34.)

## LEGAL STANDARD

Summary judgment is appropriate "where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). In determining whether to grant summary judgment, "we construe all facts in the light most favorable to the" non-moving party "and draw all reasonable inferences in that party's favor." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, the non-moving party must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles*, 914 F.3d at 1048.

"On summary judgment we do not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). "We have 'one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" *Id.* (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). Trial is necessary "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also PMT Mach. Sales, Inc. v. Yama Seiki USA, Inc.*, 941 F.3d 325, 328 (7th Cir. 2019) ("To defeat summary judgment, a party must present a 'genuine dispute' of material fact such that a reasonable jury could find in its favor." (quoting Fed. R. Civ. P. 56(a))).

## ANALYSIS

Young asserts three claims based on the Eighth Amendment (Counts I, II, and III) and one claim based on the First Amendment (Count IV). (Second Amended Complaint ("SAC")

(Dkt. No. 68) ¶¶ 32–78.) Defendants move for summary judgment on all four claims. (*See generally* Mem.) In responding to Defendants' summary judgment motion, Young states that he is voluntarily dismissing his First Amendment claim. (Opp'n at 1 n.1, 11.) At this stage of the litigation, however, Young needs Defendants' written consent or our leave to dismiss Count IV; he cannot do so on his own. *See* Fed. R. Civ. P. 15(a)(2); *Taylor v. Brown*, 787 F.3d 851, 857–58 (7th Cir. 2015) (explaining that the proper vehicle for dropping a claim against a defendant is to amend the complaint under Rule 15(a)(2)). We thus construe Young's statement as a request to constructively amend the operative complaint to drop Count IV. Because Defendants do not object to Young's request in their reply (*see generally* Defendants' Reply in Support of Their Motion for Summary Judgment ("Reply") (Dkt. No. 116)), we grant the request. Accordingly, we only address whether summary judgment is appropriate on Young's Eighth Amendment claims.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Giles*, 914 F.3d at 1048 (quoting U.S. Const. amend. VIII). Young raises two types of claims based on this prohibition. He contends that Defendants used excessive force in violation of the Eighth Amendment when they pushed him down a flight of stairs. (SAC ¶¶ 43–54 (Count II).) Young also contends that Defendants violated the Eighth Amendment by displaying deliberate indifference to (1) his low bunk permit and (2) his need for medical treatment after he was pushed down the stairs. (*Id.* ¶¶ 32–42 (Count I), ¶¶ 55–66 (Count III).)

I. **Excessive Force**

We begin with Young's excessive force claim, Count II. The Eighth Amendment protects a prisoner from the "unnecessary and wanton infliction of pain." *See Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct.

7

1078, 1084 (1986)). "Correctional officers violate the Eighth Amendment when they use force not 'in a good faith effort to maintain or restore discipline,' but 'maliciously and sadistically for the very purpose of causing harm.'" *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 998 (1992)).

Young contends that Defendants violated his Eighth Amendment rights on November 30, 2017, when they pushed him headfirst down a flight of stairs while he was handcuffed behind his back. (SAC ¶¶ 1, 50–53; Opp'n at 1, 8.) Defendants do not dispute that a reasonable jury could conclude that this conduct, if proven, constitutes force "intended 'maliciously and sadistically'" to harm Young in violation of the Eighth Amendment. *See Lewis*, 581 F.3d at 476 (quoting *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999); *see also Davis v. Moss*, 841 F. Supp. 1193, 1195–97 (M.D. Ga. 1994) (finding, after a bench trial, that a correctional officer violated the Eighth Amendment by shoving a handcuffed prisoner down the stairs of a fire escape). Rather, Defendants argue that Young has no evidence that they pushed him down the stairs. (Mem. at 6–8; Reply at 5–6.) According to Defendants, because Young "did not see who pushed him, he is only speculating as to who pushed him." (Defs.' SOF ¶ 33.)

We disagree. Young's deposition testimony provides sufficient evidence upon which a reasonable jury could rely to conclude that Defendants pushed Young down a flight of stairs. Young testified that after he cuffed up, Defendants escorted him down the hallway, shoving him as they walked; that Fox was behind him on his left side, and Jenkins was directly behind him, holding the handcuffs; and that when he got to the top of the stairs, he was pushed in the left side of his back and the back of his head and fell headfirst down the stairs. (Young Dep. at 83:3–84:1, 84:13–17, 86:3–87:4, 99:21–101:15.) Even though Young did not see who pushed him (which is not surprising, as he was pushed from behind), it is not speculation or conjecture for

Young to say that Defendants, who were the only individuals behind him when he arrived at the top of the stairs, were the individuals that then pushed him down the stairs. Instead, it is common sense. *See HCP of Ill., Inc. v. Farbman Grp. I, Inc.*, 978 F. Supp. 2d 943, 946 n.1 (N.D. Ill. 2013) ("[J]udges in summary judgment proceedings . . . are not to ignore common sense and human experience.").

Relying upon *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007), Defendants contend that we cannot accept Young's version of events because it "is blatantly contradicted by the record, so that no reasonable jury could believe it." (Mem. at 7–8 (quoting *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776); Reply at 6 (same).) But *Scott* is inapposite; it only applies to cases where irrefutable evidence, like a videotape that unquestionably shows the events in question, contradicts the plaintiff's version of events. *See Scott*, 550 U.S. at 378–81, 127 S. Ct. at 1774–76 (finding that the lower court should not have relied upon the plaintiff's version of events surrounding a high-speed chase at summary judgment where a videotape, which unquestionably showed what happened during the chase, "blatantly contradicted" the plaintiff's version of events such "that no reasonable jury could have believed him"); *Eagan v. Dempsey*, 987 F.3d 667, 691 n.56 (7th Cir. 2021) (explaining that *Scott* is "a narrow, pragmatic exception reserved for cases of irrefutable evidence like that in *Scott*" (quotation marks omitted)). Defendants do not direct us to a video recording that makes it impossible for a reasonable jury to believe Young's testimony by showing, by way of example, that Young walked down the stairs without falling or that although Young fell down the stairs, Defendants were nowhere near him when the fall occurred. The competing evidence here is sworn testimony: Young's testimony against Defendants' testimony. It will be up to the jury to decide whose testimony to believe. *See Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) ("A court's job on summary judgment is not to

9

resolve swearing contests or decide which party's facts are more likely true. These credibility disputes are for fact finders to resolve." (citations omitted)). We therefore deny Defendants' motion for summary judgment on Young's excessive force claim.

## II. Deliberate Indifference

We now proceed to Young's deliberate indifference claims, Counts I and III. Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical needs." *Giles*, 914 F.3d at 1048–49. To prevail on a deliberate indifference claim, a plaintiff must prove that (1) he had "an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Id.* at 1049 (quotation marks omitted).

### A. The November 30 Incident

We first address Count III, in which Young alleges that Defendants were deliberately indifferent to his serious medical needs when they ignored his request for medical attention immediately after they pushed him down the stairs on November 30, 2017. (SAC ¶¶ 1, 61, 64, 65; Opp'n at 8.) Defendants argue that summary judgment for them on this claim is appropriate because there is no evidence that Young sought medical attention or that he was denied medical treatment after he fell down the stairs. (Mem. at 6–7.) We are not persuaded.

First, a reasonable jury could rely upon Young's deposition testimony to find that he had an objectively serious medical condition after his fall down the stairs. "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Young testified that he somersaulted down the stairs, hitting the rail, the wall, and every stair on the way down, and suffered bruises, cuts, and a blow to the head. (Young Dep. at 37:21–38:2, 63:24–

10

64:3, 86:3–87:4.) If a jury believes this testimony, it could reasonably conclude that Young's need for medical attention after the fall would be obvious even to a lay person. Therefore, there is evidence in the record satisfying the objective element of Young's deliberate indifference claim.

Second, there is evidence in the record satisfying the subjective element of Young's deliberate indifference claim. The subjective element requires "a sufficiently culpable state of mind, something akin to recklessness." *Giles*, 914 F.3d at 1049 (quotation marks omitted). To satisfy this element, "a plaintiff must provide evidence that [a prison] official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (emphasis in original). If Young's testimony is credited, Defendants pushed Young down the stairs and then dragged him along the floor after he landed at the bottom of the stairs. (Young Dep. at 37:9–13, 85:18–24, 86:22–87:17, 99:21–101:15.) Based on this testimony, a reasonable jury could conclude that Defendants actually knew of Young's injuries, as it is reasonable to infer that Defendants observed Young's fall from the top of the stairs and that they saw Young's injuries from the fall when they dragged him along the floor. A reasonable jury could likewise conclude that Defendants disregarded Young's injuries from the fall. There is no evidence that Defendants did anything to address Young's injuries after the fall, such as calling for medical attention or even asking Young if he was hurt. Rather, according to Young, Defendants dragged him by the handcuffs and placed him in the bullpen without saying a word. (*Id.* at 37:9–13, 85:18–24, 86:22–87:17, 88:1–3.) A jury could reasonably find these actions indicative of a sufficiently culpable state of mind. *See Giles*, 914 F.3d at 1049.

The evidence Defendants identify does not compel a different conclusion. Defendants direct us to documentation indicating that Young refused medical treatment on the day of his

11

alleged fall down the stairs. (Defs.' SOF ¶ 34 (citing Dkt. No. 100 (Nov. 30, 2017 progress note and medical services refusal)).) Defendants also contend that Young's progress notes show that he "did not seek any medical attention on or after November 30, 2017, regarding an alleged fall." (*Id.* (citing Dkt. No. 99).) But Young testified that he did ask for medical attention after the fall (while he was in the bullpen) and that he has never refused medical treatment. (Young Dep. at 88:11–22, 91:18–20.) Given the medical documentation in the record, a jury may not believe Young's testimony, but it is up to the jury to make this determination in the first place. *See Gupta*, 19 F.4th at 996. What is more, even if the jury concludes that Young did not seek medical treatment for a fall or that he refused medical treatment on the day of the fall, it could still reasonably credit Young's testimony that Defendants dragged him on the floor by his handcuffs and failed to request medical attention immediately after the fall. *See United States v. Rollins*, 544 F.3d 820, 836 (7th Cir. 2008) (a jury may credit a witness's testimony in part); *Meadows v. NCR Corp.*, No. 16 CV 6221, 2021 WL 5299778, at *6 (N.D. Ill. Nov. 15, 2021) (same). In other words, whether Defendants acted with deliberate indifference immediately after Young's fall does not necessarily hinge on whether Young sought treatment for the fall at a later time.

In sum, a reasonable jury could conclude that Defendants were deliberately indifferent to Young's serious medical needs in the aftermath of his fall down a flight of stairs. So, we deny Defendants' motion for summary judgment on Count III.

    **B.**     **The October 27 Incident**

We finally come to Count I, in which Young alleges that Defendants displayed deliberate indifference to his medical needs on October 27, 2017, when they attempted to force him to take the top bunk despite knowing that he had a low bunk permit. (SAC ¶¶ 1, 8–14, 37–41.) Defendants argue that summary judgment is appropriate on this claim for two reasons. First,

Defendants argue that Young cannot establish that they "acted with a sufficiently culpable state of mind as to his low bunk permit because the permit was not at issue" on October 27. (Mem. at 5–6.) Instead, Defendants contend, the issue that day was Young's refusal "to let anyone in his cell because he did not want a cellmate." (*Id.* at 5.) Second, Defendants argue that the Prison Litigation Reform Act ("PLRA") requires Young to "show that he endured some physical injury while in custody," which Young has not done. (*Id.* at 6.) Neither argument is convincing.

With respect to their first argument, Defendants overlook the evidence in the record that contradicts their version of events. Young specifically testified that he did *not* refuse to have a cellmate and that he did *not* block his cell door so the correctional officers could not enter. (Young Dep. at 20:2–7, 78:9–79:5.) At least according to Young, the October 27 incident came about because Officer Peters told him to move to the top bunk even though Young had a low bunk permit. (Pl.'s SOAF ¶¶ 7, 8; Young Dep. at 14:24–15:23, 18:20–19:7; Oct. 28, 2017 Grievance at 2.) Fox then came over to Young's cell and, despite seeing Young's low bunk permit, told Young that he was either going to the top bunk or to segregation. (Pl.'s SOAF ¶¶ 18–20; Young Dep. at 23:10–18; Nov. 5, 2017 Grievance at 3.) After Young chose to go to segregation, Fox called Jenkins to Young's cell, and Defendants escorted Young to segregation. (Pl.'s SOAF ¶ 22; Young Dep. at 21:23–22:3, 22:18–22, 23:10–20, 78:9–16; Nov. 5, 2017 Grievance at 3.) A reasonable jury could believe the evidence supporting Young's version of events over the evidence supporting Defendants' version of events.

Arguing otherwise, Defendants contend that Young's version of events is based on "bare allegations" and Young's "self-serving deposition testimony." (Reply at 2–3.) But Young's version of events is supported by much more than mere allegations; it is supported by sworn deposition testimony and the contents of documentary evidence (Young's grievances) to which

13

Young can testify at trial. *See Rankin*, 2019 WL 3554543, at *6. Moreover, we cannot ignore Young's deposition testimony simply because it may be self-serving. "Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Yet these types of evidence can all be used to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (permitting a party to rely upon depositions, affidavits, declarations, and interrogatory answers to assert that a fact is genuinely disputed); *Hill*, 724 F.3d at 967 ("As we have repeatedly emphasized over the past decade, the term 'self[-]serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Nor is this a situation like the one the Supreme Court confronted in *Scott*, where irrefutable evidence blatantly contradicted the plaintiff's version of events. (*See* Reply at 3 (relying upon *Scott*).) As with Young's excessive force claim, there is no video recording that unquestionably shows that the incident at issue did not play out as Young asserts. Instead, it is Young's word against Defendants' word, which makes summary judgment inappropriate. *See*, *e.g.*, *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) ("In short, we are left with two competing accounts, either of which a jury could believe. So summary judgment is not appropriate[.]").

    Defendants' second argument—that Young has not shown that he suffered physical injury as required by the PLRA—likewise comes up short. The PLRA states, in relevant part, that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). The Seventh Circuit has "explained that § 1997e(e) may limit the relief available to prisoners who cannot allege a physical injury, but it does not bar their lawsuits altogether." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). In fact, "[i]t would be a serious mistake to interpret

section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits." *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999). Even if a prisoner cannot prove physical injury resulting from a defendant's deliberate indifference, he may still seek relief not specifically barred by § 1997e(e), such as injunctive relief, nominal damages, or punitive damages. *Rasho v. Elyea*, 856 F.3d 469, 476–77 (7th Cir. 2017); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011); *Calhoun*, 319 F.3d at 941–42.

Young does not dispute that he has failed to show physical injury resulting from the October 27 incident. (*See* Opp'n at 7.) But Young does not need to make such a showing to maintain his low bunk deliberate indifference claim. *E.g.*, *Calhoun*, 319 F.3d at 941. If Young proves that Defendants violated the Eighth Amendment on October 27, this violation itself would constitute a cognizable injury for which a jury could award nominal damages.[4] *Id.* at 941–42. Additionally, Young seeks punitive damages, reasonable attorneys' fees, and costs. (SAC at 10 (Request for Relief).) Section 1997e(e) does not bar punitive damages. *Rasho*, 856 F.3d at 477. Nor does it bar the recovery of attorneys' fees and costs. 42 U.S.C. § 1997e(e); *see also id.* § 1997e(d) (limiting, but not prohibiting, the recovery of attorneys' fees in prisoner civil rights litigation). Because Young may recover at least these forms of relief for his low bunk claim, his lack of physical injury resulting from the October 27 incident does not provide a basis to grant summary judgment for Defendants. *See Rasho*, 856 F.3d at 476–78 (finding that "the district

---

[4] Although the Second Amended Complaint's request for relief does not expressly mention nominal damages (SAC at 10), Defendants do not explain how they would be prejudiced by such an award (*see* Reply at 4–5). At any rate, we do not believe the Second Amended Complaint's failure to expressly request nominal damages precludes Young from recovering them should he prevail on his low bunk deliberate indifference claim. *See* Fed. R. Civ. P. 54(c) (every final judgment other than a default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987) (under Rule 54(c), "the court is to determine, and award, the right relief in each case even if the complaint is silent on the question").

court erred in suggesting that the [prisoner's] lack of a physical injury provided an independent basis to grant summary judgment" on the prisoner's deliberate indifference claim because the prisoner could still recover nominal and punitive damages).

We therefore deny Defendants' motion for summary judgment on Count I as well.

## CONCLUSION

For the foregoing reasons, we deny Defendants' motion for summary judgment (Dkt. No. 95). Because we have granted Young's request to voluntarily dismiss Count IV, this case will proceed on Counts I, II, and III only. The parties shall comply with Local Rule 16.1's instructions regarding the final pretrial order and submit a proposed final pretrial order in the form set forth by Local Rule 16.1. *See* Form LR 16.1.4, Final Pretrial Order Form, available at https://www.ilnd.uscourts.gov/_assets/_documents/_rules/LR16%20Final%20Pretrial%20Order%20Form.pdf. The parties shall submit this proposed order by April 11, 2022. The status hearing set for March 10, 2022 is stricken and reset to June 16, 2022 at 10:30 a.m. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: February 11, 2022